Blake T. Ostler (Bar No. 4642)
**THE OSTLER LEGAL ADVOCATES**
57 West 200 South, Suite 350
Salt Lake City, Utah 84101
T: (801) 575-5000
F: (801) 880-7640
Email: supes00@gmail.com
*Attorneys for Plaintiff*

**IN THE THIRD JUDICIAL DISTRICT COURT**

**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| JARED PLUMB,<br><br>  Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF UTAH; and ROSS WHITAKER, an individual; and John Does 1-10 .<br><br>  Defendants. | Civil No.<br><br>JUDGE<br><br>JURY DEMANDED |

The Plaintiff Jared Plumb alleges against the Defendants the University of Utah, Ross Whitaker and Feifei Li as follows:

**I. JURISDICTION AND PARTIES**

1. This is an action under 42 U.S.C. section 1983 for deprivation of the Plaintiff's rights under the First and Fourteenth Amendments of the Constitution, for deprivation of procedural and substantive rights of due process, and for breach of contract.

2. The University of Utah (hereafter "U of U") is an educational body corporate of the State of Utah operating in Salt Lake County, State of Utah.

3. Ross Whitaker is an individual residing in Salt Lake County.

4. John Does 1-10 are individuals who conspired with the named Defendants to deprive him of his substantive and procedural Due Process and Equal Protection rights.

## II. FACTS

5. Mr. Plumb was admitted to the computing/data management and analysis Ph.D. program at the University of Utah in 2013.

6. Mr. Plumb chose his initial adviser for his advisor program, Feifei Li, and selected Mark Van Langeveld to be part of his initial committee to work with him to earn a Ph.D. degree.

7. As an initial advisor Mr. Li should have helped Mr. Plumb to choose courses and navigate the Ph.D. program.

8. However, Mr. Li did not provide any guidance for Mr. Plumb and told him to just take classes.

9. Mr. Plumb did his best to follow Mr. Li's advice and completed the specified program requirements.

10. As part of the contract with the Plaintiff, the University of Utah published a Graduate Handbook Catalog with program requirements that stated that up to 20 course credit hours from prior courses could be applied to the Ph.D. program.

11. Mr. Plumb relied upon these representations and statements to choose the University of Utah for his Ph.D. program and to plot his course of classes he would take to achieve that purpose.

12. In the fall of 2014 Mr. Li took a sabbatical leave and failed to notify Mr. Plumb. In fact, no one in the program notified Mr. Plumb. In fact no one in the Ph.D. program even notified Mr. Plumb of Mr. Li's absence. Without an advisor Mr. Plumb did not know how to proceed with the program and reported a complete lack of guidance to the program chair. As a result, Mr. Plumb changed his Ph.D. to a computer science Ph.D. in the summer of 2015 and switched his class advisor to Sneha Kasera, who was the director of graduate studies at the school of computing at the University of Utah that time.

13. In 2015 and 2016 Mr. Plumb progressed with respect to his course requirements and selected subjects for research papers. In addition by the spring of 2017 (within five semesters of starting his Computer Science Ph.D. Mr. Plumb had chosen his Ph.D. committee. The committee members were Mr. Kasera, Ryan Stutsman and Robert Ricci. The external committee members were Mark Van Langeveld and the director of the school of computing entertainment arts and game studio program and Magda El Zarki, the director of the Institute for Virtual Environments and Computer Games and Co-founder of the Computer Science Program at UC Irvine. Notably, Mr. El Zarke supervised many Ph.D students over her career.

14. As of spring 2017, Mr. Plumb had finished his course requirements maintaining a 3.8 GPA in his course work. Additionally, Mr. Plumb's papers were accepted to be published. One of these papers, "Google's Edge Network for Massively Multi-player Online Games", was scheduled for publication in May 2018. The other paper, "Hybrid Network Clusters Using Game Play for Massively Multi-player Online Games", was scheduled for publication in August 2018.

15. Mr. Li returned from sabbatical in 2016 and became the School of Computing Director for Graduate Studies.

16. Without notifying Mr. Plumb in any way in the Fall of 2016, Mr. Li met with faculty members and reviewed Mr. Plumb's progress in the program. The faculty committee considered Mr. Plumb's time when he first started in the School of Computing Program in 2013 rather than his progress from the time he started in Computer Sciences Ph.D in 2015 and as a result faculty members expressed concern about Mr. Plumb's progress and voted to remove him from the program. There was an additional secret meeting in the Fall of 2017 at which faculty voted to remove Mr. Plumb from the Ph.D program. However, no one from these secret discussions informed Mr. Plumb of these concerns or the votes during the Fall 2016 and again in 2017. Those who participated in these meetings conspired against Mr. Plumb to violate his fundamental Due Process rights in his education.

17. From this point on the faculty members in the School of Computing continued to collude to deprive Mr. Plumb of his constitutional contractual rights by refusing to provide to him essential information, making arbitrary and capricious decisions to refuse credit to him and refusing to provide any process to review their arbitrary decisions.

18.     In February of 2018 Mr. Li met with Mr. Plumb about his progress in the Ph.D program. Mr. Li finally told Mr. Plumb about the faculty committee Vote. Mr. Li was very critical of Mr. Plumb because he had not yet published. When Mr. Plumb informed Mr. Li that two of his articles had already been approved for publication, Mr. Li ignored the value of the articles and refused to discuss them with Mr. Plumb or to address issues of further progress of the program. However, Mr. Li gave Mr. Plumb additional time to show that he was making progress in the program. Thereafter Mr. Plumb asked his committee about Mr. Li's concerns and Mr. Plumb responded that he wanted concrete dates and specific requirements for his final program requirements.

19. The committee therefore established dates to complete two of Mr. Plumb's final requirements: (1) the written qualifier was scheduled for April 2018; and (2) the oral qualifier for the Dissertation Proposal was scheduled for May 2018.

20.     On 10 May 2018 Mr. Plumb was informed that the committee would only allow two EAE courses or six (6) hours of Mr. Plumb's prior course work to count toward his Ph.D program instead of the 20 hours stated in the Catalog that had been provided to him at the time her entered the program.

21.     On 10 May 2018 Mr. Jacobus (Kobus) Vandermere notified Mr. Plumb that: "We will allow no more than two EAE courses to be applied to your program of study. The EAE courses cannot be used to substitute any of the three required course i.e., CS6150 (Advanced Algorithms), CS64606 (Operating Systems), CS6810 (Computer Architecture)."

22.     The communication from Mr. Vandermere was the first time that anyone in the program, after five years, had notified Mr. Plumb that the 20 hours of course work that had previously been relied upon to meet the requirements of his Ph.D program, would not be allowed and that he would have to take all of these courses or take other courses that would count towards his Ph.D program. The change in the contractual agreement stated in the Catalog published and promoted by the University of Utah and the Computer Science faculty and relied upon in all prior conversations about Mr. Plumb's progress in the Program represented over 18 hours and $40,000.00 in costs to complete the program. In addition, it would take an additional year to complete the program. However, without finishing the Ph.D Mr. Plumb's future salary and employment prospects were severely diminished.

23.     Mr. Plumb pushed back on the decision to disallow the prior credit because it represented a major change in his entire program and modified the entire course of dealing between the parties and his reliance on all communications that occurred between him and the University of Utah Computer Science in the School of Computing.

24.     On 14 May 2018 Ross Whitaker notified Mr. Plumb that he was being dismissed from the program and that the decision to dismiss him had been made "this past November" and that the faculty had voted that he should be removed from the Ph.D program due to lack of progress and inability to meet the new progress requirements of the school. Further, Mr. Whitaker falsely claimed that the removal was consistent with the school's policy described in the Graduate Handbook.

25. Mr. Whitaker's statement to Mr. Plumb that the decision to remove him from the program could not be appealed was false and contrary to University of Utah Policy and the Graduate Handbook.

26. In response, Mr. Plumb requested an appeal of the decision. The appeal was denied by Mr. Whitaker who inaccurately stated that there was no right of appeal.

27. Mr. Plumb, through legal counsel, demanded immediate reinstatement into the Computer Science Ph.D program with all courses considered completed and the ability to take the written qualifier within one semester after being readmitted on 27 November 2018.

28. For eight months Mr. Plumb continued to request an appeal and the members of the faculty continued to state that he was not entitled to an appeal and that the decision was final.

29. Mr. Plumb had several communications with Ross Whitaker and other members of the Computer Science Faculty exploring exactly why he had been removed from the Ph.D program. Mr. Whitaker responded that he did not have to explain anything and that the decision was final.

30. The matter was referred to Barbara W. Payne the Associate General Counsel of the University of Utah to review to determine what action would be taken with respect to a demand to an appeal through Mr. Plumb's legal counsel

31. On 17 July 2019, more than a year after his dismissal from the program, counsel from the University of Utah stated for the first time to Mr. Plumb's legal counsel that the

Computer Science Department would not object to an appeal to the College Academic Appeals Committee.

32. On 11 November 2019 after months of negotiations, Mr. Plumb notified legal counsel for the University of Utah that he was demanding an appeal. The appeal was not contested by the School of Computer Science and was set before the College of Engineering Review Panel.

33. Mr. Plumb filed his appeal of the dismissal and additional issues on 13 November 2019, a true and correct copy is attached hereto as Exhibit "A."

34. On 15 November 2019 Ross Whitaker Director of the School of Computing responded to Mr. Plumb's appeal.

35. On 6 December 2019 Mr. Plumb was notified that the panel members would be Ramesh Goel, Ross Walker, Candice Floyd, Kaai Kauwe and Sid Agrawal. The hearing was scheduled for 7 January 2020.

36. On 30 December 2019 Mr. Plumb received Ross Whitaker's documents and witness list. The disclosure document failed to identify all documents that were admitted for consideration at the hearing.

37. On 5 February 2020 the College of Engineering Academic Appeals Committee rendered its decision. Mr. Plumb's appeal was granted with respect to his request to reinstate him into the Ph.D program and denied as to the remaining issues. The Appeals Committee found that

Mr. Plumb had not made adequate progress but that there were not sufficient prior notices that he was not making adequate progress and therefore reinstatement was required.

38. The decision of the Appeal Committee was arbitrary, capricious and violated Mr. Plumb's procedural due process and substantive due process rights.

39 On 5 February 2020, Kevin Whitty, Associate Dean for Research of the College of Engineering, accepted the decision of the Appeals Committee. Mr. Plumb was accepted into the Ph.D on probation.

40. Immediately Mr. Plumb noted that the Appeals Committee Decision simply reinstated him into the program with the finding that he had not made adequate progress but that the School of Computer Science had failed to give any direction or guidance as to how the lack of progress could be corrected or what was required of him after being reinstated into the program. Indeed, the sole purpose of the decision was to correct the lack of notice by setting Mr. Plumb up so that once he was reinstated into the program, the notices of his lack of progress could then be given and Mr. Plumb would once again be dismissed from the program. The decision and stance of the College of Engineering was this merely a façade and fraud to once again require Mr. Plumb to spend funds for tuition, take courses and then give him notice that he lacked the required progress toward his degree so that he could be terminated from the program.

41. During the appeal hearing, Ross Whitaker had asserted the position that the Graduate Handbook that stated required courses to achieve the Ph.D degree is not a contract, can be ignored and that he did not intend to follow it. This position left Mr. Plumb with no guidance as to what was expected and the College of Engineering would be allowed to arbitrarily and

capriciously change its requirements and impose new requirements at its whim once he was reinstated.

42. Mr. Plumb was left with no path to completion of the Ph.D program.

43. On 12 February 2020, Mr. Plumb communicated these concerns to the College of Engineering and proposed a clear plan for completion of his Ph.D program.

44. On 13 February 2020, Mr. Whitty informed Mr. Plumb that he was accepted back into the School of Computing Ph.D program "with the same status as when you had been dismissed." He asked Mr. Plumb to meet with Mr. Stutsman and the graduate advisor in the School of Computing to review degree requirement, identify what remained to be completed, and to establish a plan and schedule to complete the degree.

45. On 18 February 2020 Ross Whitaker communicated to Mr. Plumb that the College of Engineering would accept Mr. Plumb as "enrolled" in the Ph.D. program for Computer Science within the School of Computing. However, he restated that the finding that Mr. Plumb had not made adequate progress and that the Computer Science department intended to continue "to enforce its due progress requirements with proper notice and communication." Essentially Whitaker informed Mr. Plumb that the reinstatement was a façade so that notice of lack of progress could be properly given this time and then Mr. Plumb would be dismissed from the program again. The Computer Science Program, though Ross Whitaker, acted in extreme bad faith and in breach of contract and of Mr. Plumb's rights to procedural and substantive Due Process guaranteed under the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Utah.

45. On 19 February 2020 Mr. Whitty informed Mr. Plumb of the requirements to complete his Ph.D program that supposedly "were the same as when you were dismissed." He was directed to review the School of Computing Graduate Handbook for details. He was also directed to read the Graduate School webpage in its entirely.

46. On 20 February 2020 Mr. Plumb appealed those parts of the decision that were not found in his favor to the Cognizant Senior Vice President, Dan Reed.

47. On 20 February 2020 Mr. Whitaker notified Sr. V.P. Daniel Reed that it desired to appeal the decision to reinstate Mr. Plumb into the College of Engineering computer science Ph.D program.

47.   On 4 May 2020 Mr. Plumb requested clarifications as to what was expected of him to complete the program. He noted that it appeared he was merely being set up for failure and to once again be terminated from the program. He asked for clarification as to what courses would be required and what credit would be given for prior courses.

48. Later on 4 May 2020 Ross Whitaker blew off Mr. Plumb's concerns by refusing to provide any further clarification: "We have been through this on many occasions. You are expected to meet the requirements of the program. I am not going to repeat what is in the letter [written 19 February 2020 by Kevin J. Whittey] or in the handbook. Propose a program of student (sic) of a student that is consistent with what is in the letter."

49. Later on 4 May 2020, Mr. Plumb responded with a detailed summary of a proposal for classes for which he would receive credit, the courses he would need to complete and the members of his committee.

50. Whitaker refused to give any clarification as to what need to be completed to complete the program. He responded later on 4 May 2020 by stating that: "the program of study won't be accepted. The letter makes it clear – the School is no longer negotiating on this point. Complete your classes, finish your degree. Otherwise you will be out of compliance with our due progress requirements, and you will be removed from the program. I think this conversation is done."

51. Later on 4 May 2020 Mr. Plumb responded: "I am not asking unreasonable questions. The letter is not clear, and I am trying to get clarification. . . . You are the one out of compliance by not following the catalog and University policy. Stop threatening to remove me from the program every time I ask a simple question…. Please provide feedback about the structure of my committee as outlined in these emails."

52. Whitaker did not respond. On 7 May 2020 Mr. Plumb once again emailed him stating: "It has been days and I have not heard back yet answers to all my questions. These answers are important because I need to get my committee approved and new approved program of study with this committee before I can continue. Currently I have no idea what I am supposed to take this next school year."

53. On 7 May 2020 Whitaker emailed back and asserted that the letter was clear and no further information would be provided. "Take your classes, do your research, graduate – stop the nonsense."

54. Whitaker and the School of Computer Science acted in bad faith because the 19 February 2020 letter that Whitaker insisted contained all of the needed information did not state which courses needed to be taken, what credit would be given for prior courses, who members of the Ph.D committee would be and what the requirements for finishing the Ph.D program would be. Mr. Plumb was simply being set up to be terminated from the program again.

**Count I**
**42 USC § 1983 – Fourteenth Amendment Due Process**
**(vs. all Defendants)**

55. Plaintiff repeats and realleges Paragraphs 1 through 54 set forth above with the same force and effect as though set forth in full herein.

56. As a student at a public university, Plaintiff enjoyed a constitutionally protected fundamental right and interest in continuing his Ph.D program at the University of Utah.

57. As a student at a public university, Plaintiff enjoyed a constitutionally protected property interest in continuing his computer science school education.

58. Plaintiff's reputation and his opportunity to pursue future employment constitute a constitutionally protected liberty interest.

59. Defendants' dismissal of Plaintiff from Defendant University of Utah's School of Computer Science and the reinstatement back into the program just to give notices to once again terminate his program were arbitrary and capricious and motivated by bad faith.

60. Plaintiff was not afforded an unbiased, careful, and deliberate review process either prior to or following his dismissal from and reinstatement into Defendant University of Utah's School of Computer Science.

61. Defendants made false charges and accusations against Plaintiff that stigmatized him and severely damaged his opportunities for future employment.

62. Plaintiff was denied a meaningful opportunity to complete the program.

63. In depriving Plaintiff of his constitutionally protected rights, including his fundamental right to and property interest in continuing his public university education, and his liberty interest in his reputation and opportunity to pursue future employment, Defendants' actions abridge his right to procedural and substantive due process of law in violation of the Fourteenth Amendment to the United State Constitution under 42 U.S.C. section 1983.

64. The Individual Defendant and other agents, representatives and employees of Defendant University acting under color of state law and in concert with one another, acted out of vindictiveness and ill will towards Plaintiff.

65. The acts of Defendant Whitaker and other agents, representatives, and employees of Defendant University of Utah as described above represent official policy of Defendant University of Utah and are attributable to Defendant University of Utah.

66. At all times material hereto. Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

67. As a direct and proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### Breach of Contract or Implied Contract
### (vs. Defendant University of Utah)

68. Plaintiff repeats and realleges Paragraphs 1 through 69 set forth above with the same force and effect as through set forth in full herein.

69. Plaintiff had an express contract and/or implied contract with the University of Utah.

70. Defendant failure and refusal to abide by the terms of that contract or implied contract constituted a breach of that contract.

71. As a direct proximate result, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of career opportunities and earning capacity foreseeable at the time of entering into the contract, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation in an amount to be proven at trial.

## COUNT III
### Breach of Covenant of Good Faith and Fair Dealing

**(vs. Defendant University of Utah)**

72. Plaintiff repeats and realleges Paragraphs 1 through 71 set forth above with the same force and effect as through set forth in full herein.

73. The Defendant University of Utah owed the Plaintiff owed a duty of good faith and fair dealing under its contract with Plaintiff.

74. The Defendant University of Utah breached the covenant of good faith and fair dealing by intentionally working to defeat his expectations under the contract and adopting a course of bad faith dealing to terminate the Plaintiff once reinstated into the Ph.D program.

75. As a direct and consequential result of the breach of the covenant of good faith and fair dealing the Plaintiff has suffered damages and irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of career opportunities and earning capacity foreseeable at the time of entering into the contract, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation in an amount to be proven at trial.

**PRAYER**

THEREFORE, the Plaintiff demands judgment in his favor and against the Defendants for a declaration that the Defendants have violated his substantive and procedural Due Process rights, for compensatory and contract damages in an amount to be proven at trial, for consequential damages, and for attorneys fees and costs.

DATED THIS 7th DAY OF JULY 2020.

OSTLER LEGAL ADVOCATES

*\s\     Blake T. Ostler*

Blake T. Ostler