IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,
CENTRAL DIVISION

| | |
|---|---|
| JARED PLUMB<br><br>      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, ROSS WHITAKER, in individual, and JOHN DOES 1–10,<br><br>      Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br>Case No. 2:20-cv-00574<br>Judge Tena Campbell |

Plaintiff Jared Plumb was dismissed from Defendant University of Utah's Computer Science Ph.D. program in 2018. Mr. Plumb challenges his dismissal from the program, alleging that the University of Utah (University), Ross Whitaker, and John Does 1–10 violated his federal due process rights and breached contractual obligations. Defendants now move to dismiss all three of Mr. Plumb's claims under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss, ECF No. 5.) For the reasons set forth below, Mr. Plumb's due process claim survives dismissal, but his contract claims are dismissed. Accordingly, the court GRANTS IN PART and DENIES IN PART Defendants' 12(b)(6) motion.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." <u>Slater v. A.G. Edwards & Sons, Inc.</u>, 719 F.3d 1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009). A claim is facially plausible when the complaint contains factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014). The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

## FACTUAL ALLEGATIONS[1]

Mr. Plumb was admitted as a computing Ph.D. student at the University in 2013. In choosing to enroll in this Ph.D. program, Mr. Plumb relied on the University's Graduate Student Handbook (the handbook) which describes course, credit, and examination requirements for Ph.D. students. The handbook states that "up to 20 course credit hours taken elsewhere or counted toward previous degrees" can be applied to a Ph.D. student's program of study, subject to the approval of the Graduate Studies Committee. (Compl. at ¶ 5–11, ECF No. 2; Pl.'s Opp'n Ex. 1, ECF No. 8.)

After starting his program, Mr. Plumb selected Feifei Li as his advisor. But Mr. Li did not give much guidance to Mr. Plumb. In fall 2014 Mr. Li left on a sabbatical without telling Mr. Plumb, which led Mr. Plumb to change his Ph.D. program to computer science in the summer of 2015. He selected a new advisor. (Compl. ¶ 6–8, 12.)

---

[1] All factual allegations are from Mr. Plumb's complaint and the court accepts them as true. See Albers, 771 F.3d at 700.

Mr. Plumb continued with his studies until 2017. He contends that as of spring 2017, he had finished his course requirements, written two papers that were accepted for publication, and selected his Ph.D. committee. (Id. ¶ 14.) Mr. Plumb took an advanced algorithms course in spring 2017, which was one of his last required classes. He received a final grade of C+ in that course. Over the next three months, Mr. Plumb met with teaching assistants, his professor, and later with Mr. Whitaker, Director of the School of Computing, to discuss his grade. Mr. Whitaker presented the grade to a neutral third party for review. The third party ultimately upheld the C+ grade and Mr. Whitaker denied Mr. Plumb's grade exception request. (Compl. Ex. A at 5–8.) Mr. Plumb maintains that he was discriminated against when the University gave him the C+. (Pl.'s Opp'n at 12 ¶ 24(m).)

Meanwhile, Mr. Li, Mr. Plumb's former advisor, returned from sabbatical in 2016 and became the Director of Graduate Studies for the School of Computing. Mr. Plumb alleges that Mr. Li secretly met with faculty members to review Mr. Plumb's academic progress in the fall of 2016. The same group of faculty met again in the fall of 2017 and voted to remove Mr. Plumb from the Ph.D. program. No one told Mr. Plumb about the meetings. (Compl. ¶ 15–17.)

In February of 2018, Mr. Li met with Mr. Plumb and told him that the faculty voted to remove him from the Ph.D. program. During this discussion, Mr. Li was "very critical" of Mr. Plumb because he had not yet published any articles. (Id. ¶ 16.) When Mr. Plumb told Mr. Li that two of his articles had been approved for publication, Mr. Li ignored the value of the articles and refused to discuss them further. But Mr. Li did agree to give Mr. Plumb additional time to show that he was making progress toward his degree. (Id.)

Following this discussion, Mr. Plumb asked his Ph.D. committee to give him concrete dates and specific requirements so he could finish his degree. The committee set dates in May

2018 on which Mr. Plumb would complete his final written and oral qualifying exams. But on May 10, 2018, Mr. Plumb was told that only 6 credit hours of his earlier coursework would count toward his Ph.D. This disrupted his graduation plan because he believed 20 credits from earlier coursework would apply. (Id. ¶ 18–22.)

On May 14, 2018, Mr. Whitaker notified Mr. Plumb that he was being dismissed from the Ph.D. program. Mr. Whitaker stated that the faculty had voted to remove Mr. Plumb "this past November" due to Mr. Plumb's lack of progress, and that Mr. Plumb's removal was consistent with the University's policy as described in the handbook. Mr. Whitaker also stated that Mr. Plumb's dismissal could not be appealed, although this statement was false according to Mr. Plumb. (Id. ¶ 24–29.)

For eight months, Mr. Plumb continued to request an appeal of his dismissal and was told that he was not entitled to an appeal. But eventually Mr. Plumb did appeal, and on February 5, 2020, the College of Engineering Academic Appeals Committee ("Appeals Committee") granted Mr. Plumb's request for reinstatement into the Ph.D. program. The Appeals Committee held that although Mr. Plumb had not made adequate progress toward his Ph.D., he had not received sufficient prior notice of his academic deficiencies. As a result, the Appeals Committee required that he be reinstated. (Id. ¶ 31–37.)

Upon reinstatement, Mr. Plumb claims that he was given no notice or information about how to complete his program or make up for his inadequate progress. On February 12, 2020, Mr. Plumb reached out to faculty members asking for clarification about how to complete his degree. Mr. Whitty, a University dean, communicated with Mr. Plumb on February 19, 2020, stating that the requirements to complete the program "were the same as when you were dismissed" and directing Mr. Plumb to follow the handbook. Mr. Whitty asked Mr. Plumb to meet with his Ph.D.

committee and the graduate advisor of the School of Computing to review degree requirements, identify what remained to be completed, and establish a plan to complete his degree. Mr. Whitaker also told Mr. Plumb that although the School of Computing would accept him as enrolled in the Ph.D. program, he was still considered to have made inadequate progress. (Id. ¶ 40–45[2].)

On May 4, 2020, Mr. Plumb again requested clarification from Mr. Whitaker about what courses he needed to take and what credit he would receive for prior courses. Mr. Whitaker responded by email that "[w]e have been through this on many occasions. You are expected to meet the requirements of the program. I am not going to repeat what is in the letter [written on February 19, 2020, by Mr. Whitty] or in the handbook. Propose a program of student (sic) of a student that is consistent with what is in the letter." (Id. ¶ 47–48.)

Mr. Plumb sent Mr. Whitaker a proposal of the classes for which he would receive credit and the courses he still needed to complete. But Mr. Whitaker answered later in the day that Mr. Plumb's proposed program of study "won't be accepted. [Mr. Whitty's] letter makes it clear– the School is no longer negotiating on this point. Complete your classes, finish your degree. Otherwise you will be out of compliance with our due progress requirements, and you will be removed from the program. I think this conversation is done." (Id. ¶ 49–50.)

Mr. Plumb and Mr. Whitaker continued to send emails back and forth over the next few days, but Mr. Plumb alleges that these communications did not clarify what was required of him and denied him a meaningful opportunity to complete his degree. (Id. ¶ 51–54.) He alleges that his reinstatement was a pretense to give him sufficient notice of his academic deficiencies so that the University could again dismiss him from the program. (Id. ¶ 40.) Mr. Plumb's complaint does

---

[2] Mr. Plumb's complaint has two paragraphs labelled as ¶ 45; this citation refers to both of those paragraphs.

not explain what happened after May 7, 2020, or whether Mr. Plumb was again dismissed from the Ph.D. program.

## ANALYSIS

Mr. Plumb brings three causes of action: a 14th Amendment due process claim against all Defendants under 42 U.S.C. § 1983; a breach of contract claim against the University; and a breach of the covenant of good faith and fair dealing against the University. Mr. Plumb has alleged a legally sufficient due process claim that survives dismissal, but his second and third contract claims must be dismissed.

### I. 14TH AMENDMENT DUE PROCESS UNDER 42 U.S.C. § 1983

In moving to dismiss Mr. Plumb's due process claim, Defendants argue that the University did not deny Mr. Plumb due process; the University cannot be sued for money damages under § 1983 nor can Mr. Whitaker in his official capacity; and, to the extent that Mr. Whitaker is being sued in his personal capacity, he has qualified immunity.

**a. Mr. Plumb has alleged a sufficient due process claim.**

Students have a protected property interest in their continued enrollment in a program of public education. Harris v. Blake, 798 F.2d 419, 424 (10th Cir. 1986); Gaspar v. Bruton, 513 F.2d 843, 850 (10th Cir. 1975). Similarly, students have a protected liberty interest against government actors arbitrarily depriving them of their "good name, reputation, honor, or integrity" because it may "interfere with later opportunities for higher education and employment." Goss v. Lopez, 419 U.S. 565, 574 (1975). The due process clause not only provides students with a procedural safeguard against deprivations of liberty and property but also "protects substantive aspects of those interests from unconstitutional restrictions by government." Butler v. Rio Rancho Pub. Schs. Bd. of Educ., 341 F.3d 1197, 1200 (10th Cir. 2003) (quoting Harris 798 F.2d at 424.)

Mr. Plumb does not specify in his complaint whether his due process claim is for alleged violations of his substantive or procedural due process rights. But the court finds that he has alleged sufficient facts to state a claim that both types of due process rights have been violated.

To establish a violation of substantive due process, a student must demonstrate that the university's decision was arbitrary or capricious, lacked a rational basis, or "shocks the conscience." Yeasin v. Durham, 719 F. App'x 844, 852 (10th Cir. 2018); see also Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 91 (1978); Regents of the University of Michigan v. Ewing, 474 U.S. 214, 225 (1985). The student can also prevail by showing that the university's decision was motivated by bad faith or ill will unrelated to academic performance. Horowitz, 435 U.S. at 91–92. The court reviews whether the alleged due process deprivation was based on a "genuinely academic decision" and will only override the university's decision if "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Roach v. Univ. of Utah, 968 F. Supp. 1446, 1455 (D. Utah 1997) (quoting Ewing, 474 U.S. at 225).

Mr. Plumb claims that the following decisions were arbitrary and capricious and motivated by bad faith: Defendants' decision not to grant Mr. Plumb 20 credits for his prior coursework; Defendants' decision rejecting Mr. Plumb's request to change his advanced algorithms grade; Defendants' decision discounting Mr. Plumb's published papers; and Defendants' decision to reinstate Mr. Plumb into the Ph.D. program without changing his academic status or giving him clear direction about how to complete his degree. (Pl.'s Opp'n at 15.) Defendants maintain they made their decisions professionally based on Mr. Plumb's lackluster academic performance. (Defs.' Mot. to Dismiss at 7.)

Mr. Plumb has not demonstrated that Defendants' decisions regarding his course credits, advanced algorithms grade, or publications depart from academic norms or otherwise lack a rational basis. Courts show "great respect for [] faculty's professional judgement." Ewing, 474 U.S. at 225.

But why Defendants' chose to reinstate Mr. Plumb with the same "inadequate" academic status and then rejected his requests for guidance about how to change his status is puzzling. The facts in the complaint suggest that Mr. Plumb's reinstatement was, as Mr. Plumb claims, merely a pretense to mask Defendants' earlier failure to provide Mr. Plumb with adequate notice of his dismissal. For this reason alone, Mr. Plumb has alleged a sufficient substantive due process violation.

Turning to procedural due process, the court makes a two-step inquiry: first, did Mr. Plumb have a protected interest in his education at the University? And second, did Mr. Plumb receive an appropriate level of process? Schulz v. City of Longmont, 465 F.3d 433, 443 (10th Cir. 2006). As mentioned above, it is well established that Mr. Plumb, as a graduate student at a public institution, has a constitutionally protected property interest in his continued enrollment in the University's Ph.D. program. Harris, 798 F.2d at 422; Roach, 968 F. Supp. at 1451.

When it comes to determining the appropriate level of process for student dismissals, less stringent procedural requirements attach when a school makes an academic judgment about a student than when it takes disciplinary action. Harris, 798 F.2d at 423; Rossi v. Univ. of Utah, No. 2:15-CV-00767, 2016 WL 3570620, at *3 (D. Utah June 24, 2016); Halverson v. Univ. of Utah Sch. of Med., No. 2:06CV228 DAK, 2007 WL 2892633, at *12 (D. Utah Sept. 28, 2007). But procedural due process requires that a student be informed of his or her academic situation and that the school's decision is careful and deliberate. Halverson, 2007 WL 2892633 at *12 (citing

Harris, 798 F.2d at 423). The student must be made aware, prior to dismissal, of his or her "failure or impending failure to meet the program standards." Gaspar, 513 F.2d at 850–51.

    Defendants argue that Mr. Plumb was not due any procedural process. They maintain that he did not have a right to a hearing because his dismissal was for academic reasons. (Defs.' Mot to Dismiss at 7–9.) Defendants continue that even if Mr. Plumb was deserving of procedural process, he received adequate process because the faculty made a careful, deliberate decision to dismiss him after warning him about their dissatisfaction with his progress. (Id. at 8–9.) Additionally, Defendants point out that Mr. Plumb did eventually receive the appeal he sought, which included a hearing. (Id. at 9.)

    It is true that Mr. Plumb did not have a right to a hearing because his dismissal was for academic and not disciplinary reasons. But Mr. Plumb's allegations show that at several times he was not sufficiently informed of his academic situation. The court is particularly persuaded by the Academic Appeals Committee's finding that Mr. Plumb had not received sufficient notice of his academic deficiencies before his dismissal. (Compl. ¶ 37.) The court also questions why Mr. Plumb's Ph.D. committee set dates for his qualifying exams when the decision had already been made to dismiss Mr. Plumb. (Id. ¶ 19, 24.)

    When Mr. Plumb was reinstated in 2020, he was told that his status was the same as when he was dismissed. But his inquiries about how to change his academic status were not addressed. Although the facts indicate the faculty's decision to dismiss Mr. Plumb was made carefully and deliberately over the course of two years, Mr. Plumb has sufficiently alleged that he was not informed of the academic situation leading to his dismissal. Accordingly, his procedural due process claim is plausible.

### b. Neither the University nor Mr. Whitaker, in his official capacity, can be sued for monetary damages under 42 U.S.C. § 1983.

Both parties concede that the University is not subject to Mr. Plumb's claim for money damages. (Defs.' Mot. to Dismiss at 4; Pl.'s Opp'n at 13.) The University is an arm of the state and not a "person" within the meaning of § 1983; Will v. Michigan Dept. of State Police, 491 U.S. 58, 66(1989); Roach, 968 F. Supp. at 1451.

Like state universities, government officials sued for money damages in their official capacity are not "persons" under § 1983 because they assume the identity of the government that employs them. Hafer v. Melo, 502 U.S. 21, 27 (1991). Mr. Whitaker cannot be sued for damages in his official capacity as director of the School of Computing. But a government official sued in his personal capacity is a "person" under § 1983, so Mr. Plumb's request for damages for deprivation of his due process rights can be asserted against Mr. Whitaker as an individual. Id. at 30–31.

### c. Mr. Whitaker, in his personal capacity, does not have qualified immunity against Mr. Plumb's § 1983 claim.

Defendants say that Mr. Whitaker, in his personal capacity, has qualified immunity and as a result, Mr. Plumb's claim against him should be dismissed now, while this case is in its early stages. (Defs.' Mot. to Dismiss at 9–10.) Qualified immunity protects government officials from suits for money damages under § 1983 if their conduct does not violate "clearly established statutory or constitutional rights which a reasonable person would have known." Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 1818 (1982)). To overcome the qualified immunity defense, Mr. Plumb first must show that he possessed clearly

established constitutional rights. Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990). Then he must show that Mr. Whitaker violated those rights. Id.

First, Mr. Plumb's constitutional rights were clearly established at the time of his interactions with Mr. Whitaker. A plaintiff must rely on cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits to prove that an alleged constitutional right is clearly established. Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). "It is not necessary, however, for plaintiffs to find a case with exact corresponding factual circumstances." Id. Government officials are required to reasonably apply the prevailing law to their own circumstances. Id.

The Supreme Court and the Tenth Circuit have long recognized that continued enrollment in a school program is a property right protected by the due process clause. Goss, 419 U.S. at 574, 576, n. 8; Harris, 798 F.2d at 422; Gaspar, 513 F.2d at 850. Defendants argue that Mr. Plumb must show that Mr. Whitaker's "particularized actions were 'materially analogous' to the allegations at issue" and simply establishing Mr. Plumb's right to continued enrollment in the Ph.D. program "does not in any way establish [that] Whitaker's particular conduct violated any clearly established right." (Defs.' Reply at 5.)

But the existing law clearly states that Mr. Plumb has substantive due process protections against the University official's arbitrary, capricious, or bad faith conduct. He also has the procedural due process right to receive notice of his academic situation. Mr. Whitaker had a duty to reasonably apply the existing law, established by Supreme Court and Tenth Circuit precedent, to Mr. Plumb's circumstances. Based on Mr. Plumb's allegations, Mr. Whitaker failed to do so.

Second, Mr. Plumb has sufficiently alleged that Mr. Whitaker violated his constitutional rights. Mr. Whitaker's statement that Mr. Plumb had no right to appeal his dismissal from the

11

Ph.D. program appears at the least, arbitrary, and at the worst, motivated by bad faith. University Policy 6-400 Section IV(B) describes the appeals process available to students who contest an academic action. (Pl.'s Opp'n Ex 2 at 2, Section IV(B).) The student must first discuss the academic action with the involved faculty member. Id. If the issue is not resolved, the student can subsequently appeal to the chair of the academic department or someone designated by the dean. Id. If the parties continue to disagree, the student can then appeal to the Academic Appeals Committee. Id. Mr. Plumb claims that Mr. Whitaker denied Mr. Plumb's request for an appeal and "stated that there was no right of appeal." (Compl. ¶ 26.) But based on the provisions of Policy 6-400 Section IV(B), Mr. Plumb did have the right to appeal his dismissal.

Additionally, Mr. Whitaker's terse email communications after Mr. Plumb's reinstatement in February 2020 suggest that Mr. Plumb's reinstatement was not meant to give Mr. Plumb a meaningful opportunity to complete his degree. Mr. Whitaker's reluctance to provide Mr. Plumb with guidance frustrated Mr. Plumb's ability to understand his academic status or resolve his academic deficiencies. On their face, Mr. Plumb's allegations raise a plausible claim that Mr. Whitaker violated Mr. Plumb's substantive and procedural due process rights.

Mr. Plumb has shown that Mr. Whitaker violated Mr. Plumb's clearly established constitutional rights, and accordingly Mr. Whitaker cannot assert qualified immunity.

## II. BREACH OF CONTRACT

Mr. Plumb's second claim is alleged only against the University. He claims that the handbook created an express and/or implied contract and the University's failure to abide by the terms of that contract constitute a breach. (Compl. at ¶ 69–70.) Specifically, Mr. Plumb alleges that University breached the following provision:

> Unless explicitly specified by a degree/track, the program of study can include up to twenty total hours to be counted toward their Ph.D. requirements, and can be used

to satisfy some or all of the Ph.D. required courses. Like all programs of study, it must then be approved by the DGS and the graduate school. (Pl.'s Opp'n at 6 ¶ 3(g) (citing handbook at 24).)

Mr. Plumb alleges that the University breached this provision when it only accepted six credits of his prior coursework to count toward his Ph.D. The University counters that the handbook is not a contract, and even if it is a contract, there was no breach.

As a preliminary matter, the University has waived governmental immunity for Mr. Plumb's breach of contract claim under Utah Code Ann. §63G-7-301(1)(a), which states that government immunity is waived for any contractual obligation.

To survive dismissal on a breach of contract claim under Utah law, a plaintiff must state sufficient facts to establish (1) the existence of a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages. American West Bank Members, L.C. v. State, 342 P.3d 224, 230–31 (Utah 2014). The Utah Supreme Court has held that "at a minimum, a breach of contract claim must include allegations of when the contract was entered into by the parties, the essential terms of the contract at issue, and the nature of the defendant's breach." Id. at 231.)

Mr. Plumb has alleged sufficient facts showing that the handbook created a contract between the University and himself. In several cases, a breach of contract claim based on a student handbook has survived dismissal (and even summary judgment) because whether a student handbook constitutes an enforceable contract presents a question of fact. Hewlett v. Utah State Univ., No. 2:16-CV-01141-DN, 2018 WL 794529, at *5 (D. Utah Feb. 8, 2018); Roach, 968 F.Supp. at 1455. Mr. Plumb has pled facts showing the plausible existence of a contract between himself and the University: he alleges that he relied on the handbook's provisions when choosing to enroll at the University and used the handbook to guide his studies. (Compl. ¶ 11.)

Even though Mr. Plumb has adequately pled the existence of a contract, his allegations of breach are insufficient. Mr. Plumb does not provide facts describing the nature of the University's breach. The handbook states <u>up to</u> 20 hours of prior course credits can be counted toward a program of study and that these credits are subject to approval. (Pl.'s Opp'n at 6 ¶ 3(g) (citing handbook at 24).) Mr. Plumb does not allege that the University typically approves all 20 credits or that it was obligated to approve all 20 of Mr. Plumb's credits in this particular case. All that Mr. Plumb says regarding the University's breach is the conclusory statement that the University's actions constituted a breach of the handbook's express terms. (Compl. at ¶ 69–70; Pl.'s Opp'n at 20.) The University did accept 6 of Mr. Plumb's earlier course credits; this action, on its face, is well within the express terms of the handbook.

Even though the court views the facts in a light favorable to Mr. Plumb, the University's actions clearly adhered to the terms of the handbook, and Mr. Plumb does not provide any facts suggesting otherwise. Because he has not adequately pled breach of contract, his second claim must be dismissed.

### III.     BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

In this third claim, Mr. Plumb alleges that the University owed Mr. Plumb a duty of good faith and fair dealing and it breached its duty when it intentionally worked to defeat Mr. Plumb's expectations under the handbook. Under Utah law, a claim for breach of the covenant of good faith and fair dealing is a derivative of the breach of contract claim. <u>American West Bank Members</u>, 342 P.3d at 230–31. When a party does not allege the existence of facts required to plead a breach of contract, it also fails to plead a breach of the covenant of good faith and fair dealing. <u>Id</u>. Here, Mr. Plumb has not adequately pled breach of contract, and so his breach of good faith and fair dealing must fail as well.

14

**CONCLUSION**

It is ORDERED that Defendants' motion to dismiss (ECF No. 5) is GRANTED IN PART and DENIED IN PART. Mr. Plumb's 14th Amendment due process claim survives dismissal and Defendants' motion to dismiss this claim is DENIED. Mr. Plumb's second and third claims for breach of contract and breach of the covenant of good faith and fair dealing are dismissed and Defendants' motion to dismiss these claims is GRANTED.

DATED this 2nd day of December, 2020.

BY THE COURT

*Tena Campbell*

TENA CAMPBELL
U.S. DISTRICT COURT JUDGE