IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JARED PLUMB,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, ROSS WHITAKER, an individual, and JOHN DOES 1-10,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00574-TC-JCB<br><br>District Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

After being dismissed from the University of Utah's computer science Ph.D. program in 2018, Jared Plumb sued the University and Dr. Ross Whitaker, the director of the University's School of Computing. The court has dismissed all claims against the University, leaving only a constitutional due-process claim against Dr. Whitaker. (Am. Order & Mem. Decision at 11–13, ECF No. 16.) Since then, Mr. Plumb has represented himself. (ECF Nos. 28 & 29.) Dr. Whitaker now moves for summary judgment on the remaining claim, (ECF No. 35), and Mr. Plumb also cross-moves for partial summary judgment on that same claim. (ECF No. 41.) For the following reasons, the court GRANTS Dr. Whitaker's motion and DENIES Mr. Plumb's cross-motion.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND[1]

Mr. Plumb earned a master's degree in business administration and a master's degree in computing from the University in Spring 2013.  (Def.'s Mot. Summ J. (MSJ) Ex. G, ECF No. 35-8.)  He entered the University's computing Ph.D. program in Fall 2013.  (MSJ Ex. C (Plumb Dep.) 12:15–23, ECF No. 35-4.)  In that first semester, Mr. Plumb received two E (failing) grades; one was due to alleged academic misconduct.  (MSJ Ex. G, ECF No. 35-8; Ex. F, ECF No. 35-7.)  He received a B– in Computer Architecture in Spring 2015.  (MSJ Ex. G, ECF No. 35-8.)

Before switching to a computer science Ph.D. track in Fall 2015, Mr. Plumb sought to confirm whether some of his prior master's in computing courses could count as credits needed for the new Ph.D. track.  (Plumb Dep. 13:24–15:4, ECF No. 35-4; MSJ Ex. H, ECF No. 35-9.)  Computer Science Track Director Dr. Kobus Van der Merwe told him that the decision was up to Mr. Plumb's Ph.D. committee.  (MSJ Ex. H, ECF No. 35-9.)  After starting the new track, Mr. Plumb proposed an Initial Program of Study to Dr. Sneha Kasera (his advisor) and Dr. Van der Merwe.  (MSJ Ex. I, ECF No. 35-10.)  Dr. Kasera approved two prior master's courses (Game Engineering II and III) for Ph.D. credit, advised Mr. Plumb to repeat the course in which he received a B–,[2] and recommended several more classes.  (MSJ Ex. J, ECF No. 35-11.)  They signed his Initial Program of Study in October 2015 with these requirements.  (MSJ Ex. K, ECF No. 35-12.)  Mr. Plumb proposed a new Program of Study in Fall 2016 that would replace two

---

[1] Most of this factual background comes from Dr. Whitaker's statement of facts, which is thoroughly supported by admissible evidence in the summary-judgment record.  Mr. Plumb lodges numerous objections, the vast majority of which are "vague and irrelevant."  He also bombards the court with immaterial facts.  "The district court [is] not obligated to comb the record in order to make [Mr. Plumb's] arguments for him."  Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000).

[2] Mr. Plumb retook this course in Spring 2016 and received a B, meaning it could count towards his Ph.D.  (MSJ Ex. G, ECF No. 35-8.)

2

courses with two prior master's courses. (MSJ Ex. L at 4, ECF No. 35-13.) His committee did not approve the new Program of Study. (Plumb Dep. 27:5–28:15, ECF No. 35-4.)

Dr. Whitaker and other faculty members held a "due-progress" meeting in December 2016 to discuss Mr. Plumb's academic progress. (MSJ Ex. A (Whitaker Dep.) 160:13–16, 168:3–10, ECF No. 35-2.) They developed four milestones for Mr. Plumb to attain over the next year. (MSJ Ex. D, ECF No. 35-5.) He needed to form a committee, that committee needed to include faculty with appropriate game-research expertise, he needed to have an approved Program of Study and complete those courses, and he needed to demonstrate research progress by having publishable results in high-impact venues. (Id.) If Mr. Plumb could not meet these four milestones, the faculty recommended that he should leave the Ph.D. program. (See id.) Mr. Plumb received these notes on the University's Grad Tracker system in January 2017. (Id.; Plumb Dep. 59:12–66:1, ECF No. 35-4.) That same month, he reviewed the four milestones with Dr. Ryan Stutsman, who would later become his advisor. (MSJ Ex. R (Appeal Hr'g Tr.) 139:5–22, 178:11–179:7, ECF No. 35-18.) He later claimed not to have seen the milestones until Fall 2017, but he certainly had reviewed them by then. (Plumb Dep. 59:12–66:1, ECF No. 35-4; Appeal Hr'g Tr. 179:8–180:12, ECF No. 35-18.)

Mr. Plumb received a C+ (a non-passing grade) in Advanced Algorithms (a required course) in Spring 2017. (MSJ Ex. G, ECF No. 35-8; MSJ Ex. K, ECF No. 35-12.) He appealed this grade. (Plumb Dep. 33:3–7, ECF No. 35-4.) The professor reviewed Mr. Plumb's assignments and added a few points but ultimately concluded that the grade was appropriate. (Id. 33:8–17.) Mr. Plumb appealed that decision to Dr. Whitaker, who asked another professor to review Mr. Plumb's assignments and the grading rubric. (Id. 34:17–35:2.) Dr. Whitaker told Mr. Plumb that the second professor agreed that the C+ was appropriate, but he advised Mr.

Plumb that he could further appeal the grade. (Id.; MSJ Ex. M, ECF No. 35-14.) Rather than pursue another appeal, Mr. Plumb asked Drs. Whitaker and Van der Merwe for a grade exception.[3] (MSJ Ex. N, ECF No. 35-15.) Dr. Whitaker later denied the grade exception. (Whitaker Dep. 168:21–170:3, ECF No. 35-2.)

Dr. Whitaker and other faculty members held another due-progress meeting in December 2017 to discuss Mr. Plumb's progress toward the four milestones. (Whitaker Dep. 67:1–23, ECF No. 35-2.) Finding that some of the milestones were still unfinished, the faculty voted unanimously[4] to terminate Mr. Plumb from the program. (Id. 69:16–70:6; MSJ Ex. S, ECF No. 35-19; Appeal Hr'g Tr. 63:23–67:8, ECF No. 35-18.)

Mr. Plumb learned of his impending dismissal in a February 2018 meeting with Dr. Feifei Li, the Computer Science Director of Graduate Studies.[5] (MSJ Ex. U (Li–Plumb Tr.), ECF No. 35-20.) Dr. Li told Mr. Plumb that to stay in the program, he needed to meet with Dr. Stutsman (Mr. Plumb's new advisor) and his committee to develop a concrete plan about getting his research published in top venues.[6] (Id. 13:3–14, 18:16–19:10.)

By the end of Spring 2018, Mr. Plumb had yet to take or pass three Initial Program of Study courses: Advanced Algorithms (in which he received a C+), Advanced Networking, and Network Security. (MSJ Ex. G, ECF No. 35-8; MSJ Ex. K, ECF No. 35-12.) Dr. Stutsman told Drs. Whitaker, Li, and Van der Merwe in May 2018 that "grades are at the core of [Mr. Plumb's]

---

[3] The parties do not fully explain what a grade exception is. It seems to be a University policy exception under which a student can still graduate despite having received a non-passing grade in a required course. (Whitaker Dep. 169:1–25, ECF No. 35-2.) Here, it would mean that Mr. Plumb could complete his Ph.D. without retaking Advanced Algorithms.
[4] There were twenty-seven votes in favor of dismissal, zero against, and either one or two abstentions.
[5] Mr. Plumb recorded this meeting, and it was transcribed by a court reporter. Dr. Whitaker filed the transcript as Exhibit U and conventionally filed the audio recording as Exhibit T.
[6] Dr. Whitaker's statement of facts describes the required "concrete plan" as being about finishing Mr. Plumb's Program of Study courses, but Dr. Li and Mr. Plumb never discussed this. The focus of their conversation was research and publication.

lack [of] reasonable progress status." (MSJ Ex. V at 2, ECF No. 35-21.) The group met to discuss Mr. Plumb's future in the program and ultimately concluded that he had no concrete plans to complete his degree. (Whitaker Dep. 130:21–135:20, ECF No. 35-2.) That May, Dr. Whitaker drafted a letter formally dismissing him from the program and sent it to Graduate School Dean Dr. David Kieda and Dean of Engineering Dr. Richard Brown. (MSJ Ex. S, ECF No. 35-19; MSJ Ex. W, ECF No. 35-22; MSJ Ex. X, ECF No. 35-23.) Dr. Whitaker met with Mr. Plumb and told him he was terminated from the program.[7] (MSJ Ex. Z 3:1–20, ECF No. 35-24.) Nowhere in their five-minute conversation did Dr. Whitaker advise Mr. Plumb about his appeal rights. (See generally id.)

In November, a law firm representing Mr. Plumb demanded that the University reinstate him "with all coursework considered completed." (MSJ Ex. BB at 5, ECF No. 35-26.) After several months, the University rejected Mr. Plumb's proposal, but it told him that he could pursue an appeal despite the months-long delay. (MSJ Ex. CC, ECF No. 35-27.) Mr. Plumb began preparing his appeal documents. He asked the University how to appeal, and Dr. Whitaker told him to send his documents to Dr. Kasera to start the process. (MSJ Ex. DD, ECF No. 35-28.)

Mr. Plumb's appeal involved four items: his dismissal, his Advanced Algorithms C+ grade, his two E grades, and the remaining Ph.D. requirements. (Plumb Dep. 46:15–47:11, ECF No. 35-4.) Dr. Whitaker opposed the appeal. (MSJ Ex. EE, ECF No. 35-29.) On January 7, 2020, the College of Engineering Academic Appeals Committee (comprised of five members) held a three-hour-long appeal hearing. (Appeal Hr'g Tr., ECF No. 35-18.) Mr. Plumb, Dr. Whitaker, Dr. Stutsman, and Dr. Kasera were present. (See id.) Mr. Plumb testified that he had

---

[7] Mr. Plumb also recorded this meeting, and it was transcribed by a court reporter. Dr. Whitaker filed the transcript as Exhibit Z and conventionally filed the audio recording as Exhibit Y.

not been given notice about his lack of progress or the possible threat of dismissal. (See generally id.)

Two weeks after the hearing, the Committee wrote to College of Engineering Associate Dean Dr. Kevin Whitty and unanimously recommended that Mr. Plumb be reinstated because he had not been adequately informed that his status in the program was in jeopardy. (Pl.'s Cross-Mot. Partial Summ. J. Ex. OOO at 268, ECF No. 41-1.)[8] The Committee also recommended that the remaining appeal issues (Mr. Plumb's grades and the Ph.D. requirements) be denied. (Id.) Dr. Whitty accepted the Committee's recommendations in full and directed Mr. Plumb's reinstatement. (MSJ Ex. FF, ECF No. 35-30.) But Dr. Whitty also noted that "there were several aspects of Mr. Plumb's performance that did not satisfy the documented requirements for acceptable progress, including milestones not met by the required date (semester), course grades below the requirement, GPA below the requirement[,] and courses not taken." (Id. at 3.) In Dr. Whitty's view, "Mr. Plumb was not making acceptable progress towards his degree." (Id.)

Mr. Plumb asked Dr. Whitty to clarify what readmission to the program meant. (MSJ Ex. GG, ECF No. 35-31.) Dr. Whitty told Mr. Plumb that he would have the "same status" as when he was dismissed and that he needed to meet with Dr. Stutsman and the School of Computing's graduate advisor to create a plan to finish his Ph.D. (Id.) After consulting with faculty members about how to proceed, Dr. Whitaker wrote a letter to Mr. Plumb outlining the University's expectations and how Mr. Plumb could continue toward finishing his Ph.D. (MSJ Ex. B, ECF No. 35-3.) In the letter, Dr. Whitaker told Mr. Plumb that he would be reenrolled upon his request (but that he needed to reenroll by July 1, 2020), that the University would "roll back the clock" to the 2016 due-progress recommendations, that the four milestones from 2016 were

---

[8] Dr. Whitaker does not include this exhibit in his motion, and based on Mr. Plumb's objection, (Pl.'s Opp'n at 13, ECF No. 42), the court cites it for context.

nonnegotiable, that he needed to have a new Program of Study approved because the Network Security course was no longer offered, that he needed to meet with his committee to confirm their availability and to assess his research progress, and that the University would reevaluate his progress in January 2021 and July 2021 (and dismiss him if he was making insufficient progress). (Id.) Dr. Whitaker made specific suggestions about which classes to take and when Mr. Plumb could take those classes. (Id. at 4.) The letter closed on an optimistic note, wishing Mr. Plumb good luck on completing his Ph.D. (Id. at 5.)

Mr. Plumb received this letter the day it was sent—on March 23, 2020. (MSJ Ex. II, ECF No. 35-33.) In May, he emailed Dr. Whitaker with "a number of important questions and large concerns." (MSJ Ex. JJ at 4, ECF No. 35-34.) These included questions about his committee and coursework, a demand for "a list of any faculty members involved in any meeting" about him, and yet another request for a grade exception for his Advanced Algorithms C+. (Id. at 5.) Dr. Whitaker answered most of the questions, but Mr. Plumb did not seem satisfied with his responses. (Id. at 2–3.) He again asked for a new Program of Study with master's program courses, which Dr. Whitaker quickly dismissed. (Id. at 3–4.) After a few more back-and-forth emails, the exchange ended.

Mr. Plumb never reenrolled in the program, choosing instead to sue the University and Dr. Whitaker in state court in July 2020. The Defendants timely removed the case and moved to dismiss the complaint under Rule 12(b)(6). The court dismissed the University from the action, but Mr. Plumb's due-process claim against Dr. Whitaker survived. Since his attorney withdrew in August 2021, Mr. Plumb has proceeded pro se. Now Dr. Whitaker seeks summary judgment on the remaining claim, as does Mr. Plumb.

/ / /

## LEGAL STANDARD

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could affect the outcome of the lawsuit." Arlin Geophysical Co. v. United States, 946 F.3d 1234, 1237 (10th Cir. 2020) (quoting Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013)).  "A factual dispute is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." Id. (quoting Cillo, 739 F.3d at 461).

The movant must first show the "absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (quoting Teets v. Great-W. Life & Annuity Ins. Co., 921 F.3d 1200, 1211 (10th Cir. 2019)).  But the court must always view the facts and draw all reasonable inferences in favor of the nonmovant. Hall v. Allstate Fire & Cas. Ins. Co., 20 F.4th 1319, 1323 (10th Cir. 2021) (citing Cillo, 739 F.3d at 461).

## ANALYSIS

Mr. Plumb's remaining cause of action is brought under 42 U.S.C. § 1983.  Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

Mr. Plumb alleges that Dr. Whitaker should be held liable under § 1983 because (1) Dr. Whitaker acted under color of state law, (2) Dr. Whitaker deprived Mr. Plumb of his Fourteenth Amendment due-process rights, and (3) Mr. Plumb suffered damages.  As the parties

acknowledge, the § 1983 claim is really two claims: one for substantive due process and another for procedural due process. Dr. Whitaker raises qualified immunity as a defense.

I. **Qualified Immunity**

Qualified immunity is an immunity from suit, not an affirmative defense to liability. Pearson v. Callahan, 555 U.S. 223, 231 (2009). Once a defendant raises qualified immunity, the burden shifts to the plaintiff to establish two prongs. Hollingsworth v. Hill, 110 F.3d 733, 737–38 (10th Cir. 1997). First, the plaintiff must show that the employee "violated a federal statutory or constitutional right." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). Second, the plaintiff must show that "the unlawfulness of [the defendant's] conduct was 'clearly established at the time.'" Id. (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). The court is free to examine the two prongs of the qualified immunity analysis in either order. Pearson, 555 U.S. at 236.

The court previously denied qualified immunity on Dr. Whitaker's motion to dismiss because it found that Mr. Plumb's complaint sufficiently alleged that Dr. Whitaker had violated his clearly established constitutional rights. (Am. Order & Mem. Decision at 11–13, ECF No. 16.) This decision was partially due to the "more challenging standard of review" that applies when a defendant asserts this defense on a motion to dismiss. Thompson v. Ragland, 23 F.4th 1252, 1256 (10th Cir. 2022) (quoting Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014)). But "district courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., Inc., 495 F.3d 1217, 1225 (10th Cir. 2007).

Because the court only analyzed qualified immunity on a motion to dismiss, the court will now reconsider that issue on summary judgment. See Stewart v. Beach, 701 F.3d 1322, 1328–29 (10th Cir. 2012) (rejecting an argument that the district court's denial of qualified

immunity could not be reconsidered); Thompson, 23 F.4th at 1256 ("On a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for [constitutionality].'" (quoting Behrens v. Pelletier, 516 U.S. 299, 309 (1996))). As the court will discuss, Dr. Whitaker's actions did not violate the Due Process Clause, so he is entitled to qualified immunity and summary judgment on Mr. Plumb's remaining § 1983 claim.

## II. Due Process Clause

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause encompasses both procedural and substantive due process:

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty[,] or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991). Mr. Plumb alleges that Dr. Whitaker violated his procedural and substantive due process rights, so the court will discuss each in turn.

### A. Procedural Due Process

Courts use a two-step test to determine whether a plaintiff's procedural-due-process rights were violated: "(1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)). Dr. Whitaker does not dispute that Mr. Plumb had a constitutionally protected property interest in continued enrollment in the University's Ph.D. program. (MSJ at 38, ECF No. 35; Def.'s Reply at 22, ECF No. 48.) He

10

instead argues that under the second prong, he provided Mr. Plumb with an appropriate level of process before dismissing him from the program.

When dismissing a student for deficient academic performance, due process requires only that school authorities "advise that student with respect to such deficiencies in any form." Gaspar v. Bruton, 513 F.2d 843, 851 (10th Cir. 1975). "All that is required is that the student be made aware prior to termination of his failure or impending failure to meet those standards." Id. Put differently, "notice [to the student] followed by a careful and deliberate determination [by the faculty]" is enough. Harris v. Blake, 798 F.2d 419, 423 (10th Cir. 1986) (citing Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85 (1978)). "This standard is intentionally low and purposely leaves out a hearing requirement because courts are reluctant to interfere in the educational process or to second guess an educator's expert judgment on academic matters." Assenov v. Univ. of Utah, 553 F. Supp. 2d 1319, 1328 (D. Utah 2008) (citing Horowitz, 435 U.S. at 88–90).

Mr. Plumb was undoubtedly dismissed for his academic deficiencies, and he cites no facts "from which a rational trier of fact could find" otherwise. Talley, 923 F.3d at 894. His GPA was below the program requirement,[9] he had yet to take two Program of Study courses, and he

---

[9] The parties disagree about Mr. Plumb's GPA, but this dispute is not "genuine," as no rational jury would agree with Mr. Plumb's version of events. Dr. Whitaker claims that Mr. Plumb's GPA in required courses was 3.43 and that his non-dissertation GPA was 2.35. (MSJ at 15, ECF No. 35; Appeal Hr'g Tr. 126:17–127:4, ECF No. 35-18.) Mr. Plumb has stated before that his GPA was 3.8006, putting it above the 3.5 minimum. (E.g., MSJ Ex. N, ECF No. 35-15.) Mr. Plumb's academic transcript (MSJ Ex. G, ECF No. 35-8) is unhelpful because the "Cumulative GPA" of 3.416 includes all graduate-level work, including from both master's degrees. When the court includes all of Mr. Plumb's computer-science coursework (i.e., all 26 courses on his transcript with the prefix "CS"), his GPA is 3.555 (334.2 grade points divided by 94 units earned). But eight of those CS courses were from his master's in computing, and his Ph.D. committee repeatedly told him that only two CS master's courses (Game Engineering II and III) would count toward his Ph.D. (See, e.g., MSJ Ex. I, ECF No. 35-10.) When only counting Game Engineering II and III and the courses Mr. Plumb took during his Ph.D. (20 courses total), his GPA is 3.416 (239.1 grade points divided by 70 units). When removing the dissertation research courses (leaving 10 courses), Mr. Plumb's GPA is 2.681 (83.1 grade points divided by 31 units). Removing Mr. Plumb's Game Engineering II and III grades (leaving 8 courses) puts him at a 2.364 GPA (59.1 grade points divided by 25 units). The GPA figures that Dr. Whitaker suggests (3.43 and 2.35) are close to the ones that the court calculated above (3.416 and 2.364). But

received a C+ in a required course, meaning it could not count toward his Ph.D. He also was not making sufficient research progress. So to satisfy procedural due process, all Dr. Whitaker had to do was (1) give Mr. Plumb notice of his deficiencies and (2) carefully and deliberately decide whether to dismiss him. Dr. Whitaker did both.

Mr. Plumb knew what was expected of him (finishing his Program of Study and demonstrating concrete research progress) when he discussed the four faculty milestones with Dr. Stutsman in January 2017. (Appeal Hr'g Tr. 178:11–180:7, ECF No. 35-18.) Although he denies receiving the Grad Tracker email when it was sent in January, Mr. Plumb admitted to having seen the milestones in Fall 2017. (Plumb Dep. 62:24–64:23, ECF No. 35-4.) He also met with Dr. Li in February 2018. Dr. Li told Mr. Plumb that the faculty had voted to dismiss him from the program, and to stay in the program, Mr. Plumb needed to meet with Dr. Stutsman and his committee to develop a concrete plan about getting his research published in top venues. Mr. Plumb had notice of his deficiencies and what he needed to do to stay in the program.

The faculty also made a careful and deliberate decision to terminate Mr. Plumb. It met in December 2016 to discuss Mr. Plumb's academic progress and then set the four milestones, which were emailed to Mr. Plumb. Dr. Whitaker and the faculty met again in December 2017 to discuss Mr. Plumb's progress. Finding that he did not meet their milestones, the faculty voted unanimously to dismiss him from the program. Still, Dr. Li gave Mr. Plumb another semester to prove himself by submitting a concrete plan to improve his research. If Mr. Plumb could come back with a plan, Dr. Li offered to "take [his] plan to the faculty and try to convince them [to

---

the only way to calculate a GPA close to what Mr. Plumb suggests is to remove Mr. Plumb's two E grades, remove his C+ in Advanced Algorithms, and include older CS courses like those from his proposed (and rejected) Program of Study. (MSJ Ex. L, ECF No. 35-13.) By all accounts, Mr. Plumb's GPA fell below the University's 3.5 standard.

12

keep him in the program]." (Li–Plumb Tr. 75:7–17, ECF No. 35-20.) Mr. Plumb never came back with a plan. Even Mr. Plumb's Ph.D. committee was unhappy with his progress.

Mr. Plumb understood the University's expectations and knew that he was not meeting those expectations. Based on Mr. Plumb's academic performance, Dr. Whitaker and the faculty voted to remove him from the program. This process was sufficiently careful and deliberate. The court will not "second guess" the faculty's "expert judgment on [this] academic matter[]." Assenov, 553 F. Supp. 2d at 1328.

In its prior order, the court pointed to three alleged facts that supported Mr. Plumb's procedural-due-process claim. First, "the Academic Appeals Committee's finding that Mr. Plumb had not received sufficient notice of his academic deficiencies before his dismissal." (Am. Order & Mem. Decision at 9–10, ECF No. 16.) Second, that "Mr. Plumb's Ph.D. committee set dates for his qualifying exams when the decision had already been made to dismiss Mr. Plumb." (Id.) Third, that upon Mr. Plumb's reinstatement, "his inquiries about how to change his academic status were not addressed." (Id.) The court will briefly address these lingering issues, as it already found that "Mr. Plumb did not have a right to a hearing because his dismissal was for academic and not disciplinary reasons." (Id.)

Looking at the entire summary-judgment record (not just the complaint), it is now apparent that these three alleged facts are either immaterial or meritless. The court starts with the elephant in the room, the Academic Appeals Committee's finding of insufficient notice. Dr. Whitty wrote that "[t]here appears not to have been any other documented meetings or other correspondence with the student in which the possibility of dismissal for unacceptable progress was made clear." (MSJ Ex. FF at 3, ECF No. 35-30.) Dr. Whitaker has now shown this statement to be incorrect, as the court noted above. Mr. Plumb spoke with Dr. Stutsman about

13

the four faculty milestones in January 2017 and certainly knew about them no later than Fall 2017. And if the threat of dismissal was still in doubt, Mr. Plumb's conversation with Dr. Li in February 2018 made clear that unless Mr. Plumb corrected his deficiencies, he would be dismissed.  He had notice.

Next, the qualifying exams issue. Dr. Stutsman wrote in May 2018 that "some of the committee members were in favor of letting [Mr. Plumb] take a [qualifying exam] and move forward. Others were not. [Dr. Li's] mandate was that [the committee] needed agreement." (MSJ Ex. V at 2, ECF No. 35-21.)  This contradicts Mr. Plumb's claim that he had dates for his qualifying exams.  But nothing would be amiss even if the qualifiers were set for Spring 2018. Despite the faculty's dismissal vote, Dr. Li gave Mr. Plumb another chance to prove himself.  If anything, scheduling qualifiers would show the faculty's good faith in letting Mr. Plumb continue in the program.

And finally, Mr. Plumb's "inquiries about how to change his academic status" <u>were</u> addressed.  Dr. Whitaker's email was explicit about what Mr. Plumb needed to do: "Take your classes, do your research, graduate[.]"  (MSJ Ex. JJ at 2, ECF No. 35-34.)  Dr. Whitaker's reinstatement letter was also clear.  He gave Mr. Plumb specific steps to finish his Ph.D., which included getting a new Program of Study approved, finishing his Program of Study classes, and meeting with his committee to set new research standards.  (MSJ Ex. B, ECF No. 35-3.) Knowing that Mr. Plumb had three courses to finish, Dr. Whitaker even told Mr. Plumb that he could take Advanced Networking in the fall and Advanced Algorithms in the spring or fall, and he recommended that Mr. Plumb take Software Security as a replacement for Network Security. (<u>Id.</u> at 4.)  Even though he was given another chance to finish his degree with clear standards, Mr. Plumb chose not to reenroll.  This is not Dr. Whitaker's fault.

Mr. Plumb received an appropriate level of process before being dismissed. He has not created a genuine dispute of material fact on this issue. For that reason, the court will enter summary judgment in favor of Dr. Whitaker on Mr. Plumb's procedural-due-process claim.

### B. Substantive Due Process

Courts will uphold "a school's decision to [dismiss] a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges." Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1200–01 (10th Cir. 2003). "[T]he arbitrariness must be extreme." Camuglia, 448 F.3d at 1222. Similarly, the court will not override a university's "genuinely academic decision" unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985).

The court has already found that the reason for Mr. Plumb's dismissal was purely academic and that it followed a careful and deliberate process. Mr. Plumb points to nothing in the summary-judgment record showing that Dr. Whitaker's decision to dismiss him was "extremely" arbitrary, irrational, conscience-shocking, or not an exercise of professional judgment. And Mr. Plumb offers nothing but speculation to show that his dismissal was "based on bad faith, ill will or other impermissible ulterior motives." Ewing, 474 U.S. at 220. On the contrary, Dr. Whitaker and the faculty gave Mr. Plumb time to satisfy the four milestones, and Mr. Plumb did not meet their academic expectations. In the faculty's view, his GPA was low, he still had three classes to take, and his research was lacking. Even Dr. Whitty, who mandated that Mr. Plumb be reinstated, agreed that his academics were not up to par and that if Mr. Plumb

failed to make "immediate and sustained progress" toward fulfilling the four milestones, he would be dismissed.  (MSJ Ex. FF at 3–4, ECF No. 35-30.)

In its prior order, the court was most concerned with Mr. Plumb's allegation that Dr. Whitaker "chose to reinstate Mr. Plumb with the same 'inadequate' academic status and then rejected his requests for guidance about how to change his status," which implied that his reinstatement was a "pretense to mask [Dr. Whitaker's] earlier failure to provide Mr. Plumb with adequate notice of his dismissal."  (Am. Order & Mem. Decision at 8, ECF No. 16.)  But Dr. Whitaker's reinstatement letter (MSJ Ex. B, ECF No. 35-3) was not part of the record on the motion to dismiss.  Having reviewed the letter and the email exchange that followed, the court now finds that Dr. Whitaker gave Mr. Plumb ample guidance on how to "change his status."  As noted above, Dr. Whitaker "roll[ed] back the clock" to give Mr. Plumb time to finish the four milestones and told him what he needed to do to graduate.

With that lingering question answered, Mr. Plumb has not created a genuine dispute of material fact on this issue.  For that reason, the court will enter summary judgment in favor of Dr. Whitaker on Mr. Plumb's substantive-due-process claim.

## **CONCLUSION**

Dr. Whitaker has shown that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  No rational factfinder would conclude that Dr. Whitaker's actions violated Mr. Plumb's due-process rights, so Dr. Whitaker is entitled to qualified immunity.  The court GRANTS Dr. Whitaker's motion for summary judgment (ECF No. 35) and DENIES Mr. Plumb's cross-motion for summary judgment (ECF No. 41).[10]

---

[10] Mr. Plumb's cross-motion asks for the opposite relief: a finding that Dr. Whitaker violated his due-process rights.  Because Dr. Whitaker has established that he is entitled to summary judgment on this issue, the court does not need to separately analyze Mr. Plumb's cross-motion.  In any event, Mr. Plumb's cross-motion is also his memorandum

DATED this 19th day of April, 2022.

                                              BY THE COURT:

                                              */s/ Tena Campbell*
                                              TENA CAMPBELL
                                              United States District Judge

---

in opposition to Dr. Whitaker's motion for summary judgment. (Compare ECF No. 41, with ECF No. 42.) The court has reviewed Mr. Plumb's arguments and finds them unavailing.